CITIZENS' NAT. BANK OF STAMFORD v. STEVENSON. (No. 954.)

(Court of Civil Appeals of Texas. El Paso. April 17, 1919. Rehearing Denied May 15, 1919.)

1. APPEAL AND ERROR ⟨⟩301—ASSIGNMENTS OF ERROR—NEW TRIAL—TRANSCRIPT.

Assignments of error, not incorporated in motion for new trial nor otherwise filed in trial court, present nothing for review.

2. BANKS AND BANKING ⟨⟩242 — NATIONAL BANKS—STOCK SUBSCRIPTIONS—EXECUTION OF NOTES—"CASH."

The execution of notes in consideration of national bank stock is not compliance with constitutional and statutory provisions requiring "cash" to be paid therefor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cash.]

3. BANKS AND BANKING ⟨⟩242—STOCK ISSUE.

Note issued in payment of bank stock, made payable to bank other than that issuing stock under agreement to have stock deposited with such bank as security for payment of note, is void in the hands of such bank; it having notice that note was issued in payment for bank stock, and hence void.

4. BANKS AND BANKING ⟨⟩242—ISSUANCE OF STOCK—EXECUTION OF NOTE.

Where national bank stock purchaser executed note payable to bank other than that issuing stock, and stock was deposited with such bank as security for payment of note, and thereafter purchaser executed note payable to bank issuing stock to satisfy note executed to former bank, and upon execution of latter note received the stock, the transaction was void under statutes and act of Congress prohibiting issuance of stock in consideration of note, notwithstanding execution and delivery of prior note.

5. COURTS ⟨⟩90(4) — RULES OF DECISION — CONSTRUCTION OF STATUTES.

The construction placed upon state law by state courts will control, notwithstanding similarity to act of Congress, in absence of cases from United States courts construing act of Congress or the state law.

Higgins, J., dissenting.

Appeal from District Court, Jones County; Jno. B. Thomas, Judge.

Action by the Citizens' National Bank of Stamford against J. H. Stevenson. Judgment for defendant, and plaintiff appeals. Affirmed.

Davenport & Davenport and Andrews & Coombes, all of Stamford, and J. W. Boynton, of Anson, for appellant.

Stinson, Chambers & Brooks, of Abilene, for appellee.

HARPER, C. J. Appellant brought this suit against appellee on a note for $958.65. The defense is that it was given for the purchase money of bank stock issued by appellant which is inhibited by law; that, therefore, the note is void. Tried without a jury, and judgment rendered for appellee, from which this appeal.

The dealings between the parties leading up to and culminating in the execution of the note sued on are substantially as follows:

The Citizens' National Bank of Stamford being incorporated with a capital stock of $30,000, determined to increase its capital stock to $100,000, and thereupon solicited the defendant, by its cashier to purchase of this issue. The defendant replied that he had no money with which to make a purchase. The defendant testifies that the cashier then replied that he would make him able to buy; that thereafter he executed his demand note for $600, payable to the plaintiff. This latter statement is denied by the cashier, he testifying that defendant executed a 30-day note, payable to the Western National Bank of Ft. Worth, Tex. The trial court made the following finding of fact with reference to above and the after dealings of the parties:

"That defendant was informed that the money would be procured by him signing his note to the Western National Bank of Ft. Worth, which he on June '25, 1909, accordingly did. This note was for $600, representing the purchase price of five shares of stock of the value of $125 each; that the said note of the defendant was a demand note, and was placed by the plaintiff, or J. S. Morrow acting for the plaintiff, with the said Ft. Worth bank, and indorsed by the said J. S. Morrow, and the testimony authorizes the conclusion of fact that the money for the face value of the same was placed to the credit of plaintiff on the books of the Western National Bank; that several days thereafter the plaintiff notified the Comptroller of Currency that the necessary amount of capital stock had been subscribed and paid to the plaintiff, and thereupon the Comptroller of Currency issued his certificate to the effect, authorizing the said increase of capital stock as applied for by the plaintiff.

"That about the time of the execution of the said note by the defendant to the Western National Bank of Ft. Worth Tex., five shares of the stock of plaintiff of the par value of $100 per share was issued, but not delivered, to the defendant, but placed by the plaintiff with the Western National Bank of Ft. Worth, as collateral security for the note of the defendant. That thereafter, and in about 30 days, the defendant executed his note to the plaintiff to cover the amount of his note to the Western

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

National Bank of Ft. Worth, whereupon the note executed by the defendant to said Western National Bank was redeemed or paid and satisfied, and at the same [time] of the execution of the note by defendant to plaintiff in lieu of the Ft. Worth bank note the plaintiff then delivered said five shares of stock of plaintiff to the defendant. That defendant in this case from time to time renewed his note so given to the plaintiff, culminating in the final note sued on in this case for the sum of $958.65. the interest being added in as the note was renewed from time to time.

"The court concludes from all the evidence in this case that the plaintiff wanted to increase its capital stock, and that in order to do so it was necessary to resort to several parties, including, among others, the defendant, to get their notes for the purposes, they not having the money, or at least not paying the cash for the stock at the time, and that the object of the plaintiff in having the defendant to execute his note to the Western National Bank of Ft. Worth, instead of to the plaintiff itself, was to avoid the articles of the National Banking Law of the United States relating to the subject of increase in the capital stock, to wit, * * * and that the note of the defendant to the Western National Bank of Ft. Worth was intended to be merely temporary, for which the note of the defendant to the plaintiff was to be thereafter substituted and given in lieu thereof after the Comptroller of Currency had been notified that the capital stock had been paid in in order to induce him to issue the certificate authorizing the increase, neither the plaintiff nor defendant expecting defendant to pay the Ft. Worth note.

"The court finds that the plaintiff did not intend to violate the law, but did intend to use this method of getting around the absolute requirements of the law, which the court finds in fact, regardless of plaintiff's intentions, merely a makeshift, and that nothing whatever was added to the assets of the bank by this transaction.

"The court further finds that the defendant tendered back to the plaintiff the stock so issued to him.

"Conclusions of Law.

"1. The court concludes that the articles of the Statutes of the United States regulating the incorporation of national banks and the increase of stock thereof are not in conflict with the laws of the state of Texas authorizing the incorporation, of corporations and increasing the capital stock thereof, but that they are for all practical purposes in harmony with each other, and that consequently this case upon its face is to be and ought to be tried as any other case arising under the corporation laws of the state of Texas under a similar state of facts, and further concludes that both the Statutes of the United States and the laws of Texas prohibit the formation of a corporation or the increase of the capital stock thereof until the money or something of value or its equivalent was actually paid in.

"2. And the court concludes as a matter of law that the facts as found by the court from all the testimony would show that the law governing the transactions requiring the capital stock first to be paid in were not complied with as required by law, but that same was a pending transaction or debt at all times up until the stock was delivered to the defendant in this case, and so continues to this day; that at the time the defendant executed the first note to the plaintiff in this case, and on or about the time the stock was delivered to him, he had never paid for said stock, but the note still represented his attempted obligation for same, and that the transaction in its entirety was merely a makeshift to avoid the law.

"The court therefore concludes that the note sued on is absolutely void, and that the plea of the defendant should be sustained, and therefore renders judgment that the plaintiff take nothing by this suit."

[1] The appellant presents seven assignments of error in his brief. One, 2, 3, and 4 were not incorporated in the motion for new trial, nor otherwise filed in the trial court; therefore do not appear in the transcript; hence, we have no authority to review the matters complained of therein. Ludtke v. Smith, 186 S. W. 266.

The fifth, sixth, and seventh are grouped, raising substantially the same question.

"The court having found that originally a note was executed and delivered by defendant to the Western National Bank of Ft. Worth for the price of the stock defendant had agreed to purchase, to which note said stock was attached as collateral security; that the Western National Bank issued to plaintiff a statement of deposit showing the amount of said note had been placed to the credit of plaintiff on its books; that said note was held by said Western National Bank and owned by said Western National Bank until its maturity—it was error to hold the money for the purchase of said stock was not paid to plaintiff prior to the issuance of same."

[2] There is no pretense in this case that there was any money paid into the plaintiff's bank by the Ft. Worth bank. It is only claimed that a credit was given upon the books of the Ft. Worth bank, and .then the amount placed to the credit of the capital stock upon the books of plaintiff. Credit of this nature is not equivalent to cash within the meaning of the Constitution and statutes.

[3] It is further admitted that it was agreed before this stock was issued that when issued it would be sent to the Ft. Worth bank as security for the note. Under this state of facts the original note was void even in the hands of the Ft. Worth bank, for it had notice that it was issued in payment of this very stock. Patterson v. Onion, 202 S. W. 327.

[4] But the way we view the facts the stock was issued to defendant upon the execution and delivery of the note sued on, and for that reason the transaction is void, and it is not relieved of any of its vice by reason of the former note and transactions concerning it. Bank of Commerce v. Goolsby, 129 Ark. 416, 196 S. W. 808; Sturdevant v. Falvey, 176 S. W. 908. For, the former

note being unenforceable in the hands of either bank, it would not be a valid consideration for the note sued on.

The question suggested by the dissent is not proposed or urged by either party.

There is no question here of the completeness of the organization of appellant's bank, and no question of going behind the comptroller's certificate, as in the cases cited, in attack on the bank's lawful organization and right to sue as such, but the question here is, was the appellee's note subject to the defense that it was given in consideration of the issuance of the stock by appellant's bank? All courts are in accord in holding that considerations for notes inhibited by law are void. The issuance of stock by corporations in consideration of a note is inhibited both by the state law and by act of Congress. It is expressly held that in so far as not repugnant to acts of Congress, the contracts and dealings of national banks are left subject to the state law. Davis v. Elmira Savings Bank, 161 U. S. 275, 16 Sup. Ct. 502, 40 L. Ed. 700. In the first place there is no repugnancy between the state law and the acts of Congress.

[5] We have found no case, and have been cited to none, from the United States courts construing this act of Congress or the state law; therefore think we should be governed by the construction placed upon our law, similar to the congressional act, by our appellate courts; and, believing that the defense is good under either, it follows, that the cause should be affirmed.

HIGGINS, J. (dissenting). In bar of the note sued upon appellee made the following answer:

"Comes now the defendant herein and files this his original answer, and for such answer says:

"That the obligation sued upon herein and made the basis of this suit was given by the said defendant to the said bank for the purchase of stock in said Citizens' National Bank of Stamford, Tex.

"That the said bank is an incorporation, having its place of business at Stamford, Tex., and doing business as a bank.

"That the said contract was made and entered into by and between the plaintiff and the defendant is an illegal contract, and contravenes the Constitution and the statutes of the state of Texas, and is therefore void and inoperative.

"That no part of the said note was given for money borrowed by the defendant, but each and every item of said indebtedness was to be for stock issued by the said Citizens' National Bank of Stamford, Tex., to this defendant.

"That in accordance with said agreement, the said bank did issue the said stock to this defendant, and the defendant promised to pay for said stock by giving the said promissory note.

"That said note is not property nor money nor labor performed as coming within the meaning of the Constitution and the statutes of the state of Texas.

"Wherefore this defendant says that on account of such illegal contract, and on account of the same being void, the plaintiff should not recover of and from him anything but that he should go hence without day with his costs, for all of which he prays."

The case was tried without the aid of a jury and judgment rendered that appellant take nothing, and that the note sued upon be canceled. The trial court's findings of fact and conclusions of law upon which such judgment was rendered are as follows:

"Findings of Fact.

"1. This is a suit by the plaintiff, Citizens' National Bank of Stamford, Tex., against the defendant, J. H. Stevenson, on a note for the principal sum of $958.65, dated December 1, 1916, payable to the plaintiff June 30, 1917. The defendant admits the execution of the note, but pleads in substance that same was given for stock of the Citizens' National Bank of Stamford to be thereafter issued to him; that same was not an asset of the bank, but a mere promise to pay, rendering it void under the laws of Texas.

"2. The court finds that the plaintiff in this case had determined upon increasing its capital stock, and sought the defendant among others for the purpose of making a sale of certain stock of the plaintiff to the defendant; that the defendant had no money with which to pay for said stock, but was informed by the plaintiff that the money would be procured by him signing his note to the Western National Bank of Ft. Worth, which the defendant on June 25, 1909, accordingly did, the note being for the sum of $500, representing the purchase price of five shares of the stock of the plaintiff of the par value of $100 each; that the said note of the defendant was a demand note, and was placed by the plaintiff, or J. S. Morrow, acting for the plaintiff, with the Western National Bank of Ft. Worth, Tex., and indorsed by the said J. S. Morrow, and the testimony authorizes the conclusion of fact that the money for the face value of the same was placed to the credit of the plaintiff on the books of the Western National Bank; that several days thereafter the plaintiff in this case notified the Comptroller of Currency that the necessary amount of the capital stock had been subscribed and paid to the plaintiff, and thereupon the Comptroller of Currency issued his certificate to the effect, authorizing the said increase of capital stock as applied for by the plaintiff.

"3. That about the time of the execution of the said note by the defendant to the Western National Bank of Ft. Worth, Tex., five shares of the stock of plaintiff of the par value of $100 per share was issued, but not delivered to the defendant, but placed by the plaintiff with the Western National Bank of Ft. Worth as collateral security for the note of the defendant; that thereafter, and in about 30 days, the defendant executed his note to the plaintiff to cover the amount of his note to the Western National Bank of Ft. Worth, whereupon the note executed by the defendant to said Western National Bank was redeemed or paid and sat-

isfied, and at the same time of the execution of the note by defendant to plaintiff in lieu of the Ft. Worth bank note, the plaintiff then delivered said five shares of stock of plaintiff to the defendant. That defendant in this case from time to time renewed his note so given to the plaintiff, culminating in the final note sued on in 'this case for the sum of $958.65, the interest being added in as the note was renewed from time to time.

"4. The court concludes from all the evidence in this case that the plaintiff wanted to increase its capital stock, and that in order to do so it was necessary to resort to several parties, including, among others, the defendant, to get their notes for the purposes, they not having the money, or at least not paying the cash for the stock at the time, and that the object of the plaintiff in having the defendant to execute his note to the Western National Bank of Ft. Worth, instead of to the plaintiff itself, was to avoid the articles of the National Banking Law of the United States relating to the subject of increase in the capital stock, to wit, ――――, ――――, and that the note of the defendant to the Western National Bank of Ft. Worth was intended to be merely temporary, for which the note of the defendant to the plaintiff was to be thereafter substituted and given in lieu thereof after the Comptroller of Currency had been notified that the capital stock had been paid in, in order to induce him to issue the certificate authorizing the increase neither the plaintiff nor defendant expecting defendant to pay the Ft. Worth note.

"The court finds that the plaintiff did . not intend to violate the law, but did intend to use this method of getting around the absolute requirements of the law, which the court finds in fact, regardless of plaintiff's intentions, merely a makeshift, and that nothing whatever was added to the assets of the bank by this transaction.

"The court further finds that the defendant tendered back to the plaintiff the stock so issued to him.

"Conclusions of Law.

"1. The court concludes that the articles of the Statute of the United States regulating the incorporation of national banks and the increase of stock thereof are not in conflict with the laws of the state of Texas authorizing the incorporation of corporations and increasing the capital stock thereof, but that they are for all practical purposes in harmony with each other, and that consequently this case upon its face is to be and ought to be tried as any other case arising under the corporation laws of the state of Texas under a similar state of facts, and further concludes that both the Statutes of the United States and the laws of Texas prohibit the formation of a corporation or the increase of the capital stock thereof until the money or something of value or its equivalent was actually paid in.

"2. And the court concludes as a matter of law that the facts as found by the court from all the testimony would show that the law governing the transactions requiring the capital stock first to be paid in were not complied with as required by law, but that same was a pending transaction or debt at all times up until the stock was · delivered to the defendant in this case, and so continues to this day; that at the time the defendant executed the first note to the plaintiff in this case, and on or about the time the stock was delivered to him, he had never paid for said stock, but the note still represented his attempted obligation for the same, and that the 'transaction in its entirety was merely a makeshift to avoid the law.

"The court therefore concludes that the note sued on is absolutely void, and the plea of the defendant should be sustained, and therefore renders judgment that the plaintiff take nothing by its suit."

As explanatory of the trial court's findings a portion of the testimony of the witness J. S. Morrow is quoted as follows:

"I live at Stamford and am connected with the Citizens' National Bank. I have been connected with the bank ever since it was organized, in 1905, as I recollect, with a capital stock of $30,000. At that time I was cashier of the bank, and remained so up until possibly 1909 or longer. In 1909 the capital stock of the bank was increased to $100,000. At the time the stock was increased I remember a transaction with J. H. Stevenson, in which I sold him five shares of bank stock at $120 each. You see in increasing the capital stock we have to increase the surplus. We have so long to put up the surplus in after we organize a bank and when an increase is made we have to maintain the surplus. The value placed on the stock at the time Mr. Stevenson bought his stock was $120 per share, which would make the five shares $600. That stock was paid for at the time of its delivery to Mr. Stevenson. He borrowed the money from the Western National Bank of Ft. Worth for 30 days, I think, either 30 or 60 days, but my recollection is that nearly all of them borrowed the money for 30 days. The fact is, the law was such that we couldn't take a note for the money or borrow it. I recognized that law at the time. I had been running the bank since 1905. I remember Mr. Stevenson's matter in particular with the rest of them. There were several of them who bought stock at the time. J. W. Stevenson, Frank Morrow, Walter Johnson, and a number of them around town—J. Van Steenwyck, M. P. Jackson, and B. F. Sparks. I assisted those gentlemen in getting the money. I wrote Mr. Edmonds, president of the Western National Bank of Ft. Worth, and he sent me a batch of notes, and I filled them out for the boys, and had them sign them and send them down there. When the notes were sent down there they were placed to the credit of our bank, and we placed that amount to the credit of the capital stock and issued the stock, and the stock was sent down as collateral, and as soon as that note came back he got his stock and gave us his note to take up the note at Ft. Worth. That is the way Mr. Stevenson transacted his business. This is the stock that was originally issued to J. H. Stevenson. I was president 'of the bank at that time. That indorsement was placed on the stock before it was sent down to the bank, at the request of Mr. Edmonds. The man who furnished the money requested that the stock be indorsed after it was issued,

and then sent to him as collateral security to the note. Not only Mr. Stevenson's transaction was handled that way, but a number of others, all of them that I had anything to do with was handled that way. When that first note matured it was sent to us, and we took it up and took Mr. Stevenson's note, for it. My recollection is that the note came in about the 26th of August, and we charged it to his account, made an overdraft of it, and he came in in a few days and gave his note to us, and the stock was delivered to him then, as the banking laws would not permit us to retain it as collateral security to the note if we wanted to. I did not sell the stock to Mr. Stevenson and take his note in payment for the stock; we cannot do that, and didn't do it. I think Mr. Stevenson signed that note to the Ft. Worth bank there in our bank. I explained the purpose for which the note was to be signed. I arranged with the bank at Ft. Worth for a lot of this money for different parties. The money down there was put to the credit of the Citizens' National Bank. I think the bank had to certify to the Comptroller that the money was there for the increase of the stock. I think both my bank and the Ft. Worth bank made that certificate. That is my recollection, that that was required. The first note that was executed by Mr. Stevenson was executed in our bank, but was payable to the Western National Bank of Ft. Worth."

The defense set up by appellee is that the note was for stock issued in violation of the constitutional and statutory provisions of Texas, which forbid corporations from issuing stock except for money paid, labor done, or property actually received, etc. This defense is sustained by the conclusions of the trial court and majority of this court.

The writer is of the opinion that these constitutional and statutory provisions of our state have no application in this case. The note sued upon originated in the transaction whereby appellant, a national banking corporation, increased its capital stock. In my opinion this increase and the issue of such stock is governed by the federal law, and not by the law of Texas. Easton v. State of Iowa, 188 U. S. 220, 23 Sup. Ct. 288, 47 L. Ed. 452, and cases there reviewed. Increases in the capital stock of national banking corporations are regulated by articles 9679 and 9680, U. S. Compiled Statutes 1918, which read:

"9679. Any association formed under this title may, by its articles of association, provide for an increase of its capital from time to time, as may be deemed expedient, subject to the limitations of this title. But the maximum of such increase to be provided in the articles of association shall be determined by the Comptroller of the Currency; and no increase of capital shall be valid until the whole amount of such increase is paid in, and notice thereof has been transmitted to the Comptroller of, the Currency, and his certificate obtained specifying the amount of such increase of capital stock, with his approval thereof, and that it has been duly paid in as part of the capital of such association."

"9680. Any national banking association may, with the approval of the Comptroller of the Currency, by the vote of shareholders owning two-thirds of the stock of such association, increase its capital stock, in accordance with existing laws, to any sum approved by the said Comptroller, notwithstanding the limit fixed in its original articles of association and determined by said Comptroller; and no increase of the capital stock of any national banking association either within or beyond the limit fixed in its original articles of association shall be made except in the manner herein provided."

Under the act of Congress the increase in the capital stock of appellant was valid when: First, the whole amount of the increase had been paid in; second, notice thereof, transmitted to the Comptroller of Currency; third, the Comptroller's certificate obtained.

The findings show that the notice was given and the Comptroller's certificate issued. No point as to these facts are made, but the contention is that the money for Stevenson's share of the increased capitalization was not in fact paid in, but the transaction was colorable and a fraudulent device on the part of the bank to evade the law.

The law does not undertake to specify the manner in which the money shall be paid, and the writer is of the opinion that the action of the Ft. Worth bank in passing the amount of Stevenson's note to the credit of the Stamford Bank constituted payment within the meaning of the law. It is a matter of common knowledge that in the banking business payments are usually made by a system of credits, and that in fact there is but seldom an actual transfer of the cash itself.

But however this may be, it is unimportant here. The controlling fact is that the Comptroller has issued his certificate after having been notified that the increased capital stock had been paid in. Under the act of Congress the Comptroller was vested with jurisdiction and power to pass upon the sufficiency of the payment and the validity of the increase, and appellee cannot in this collateral proceeding go behind the certificate and show that the increase and issue of the stock to him was void upon the ground that the facts did not exist which would authorize the certificate. So far as appellee is concerned the certificate of the Comptroller is conclusive as to the sufficiency of the payment. This conclusion, it seems to me, is sustained by the authorities.

In the case of Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168, Casey, as receiver of, the

New Orleans National Banking Association, sued Galli, a stockholder, to enforce the latter's personal liability. As shown by the syllabi of the case, it was held:

"1. Where the Comptroller of the Currency has ordered the receiver of a suspended national bank to enforce the personal liability of its stockholders, the amount to be paid rests in the judgment and discretion of the Comptroller, and his determination cannot be controverted by the stockholders in suits against them."

"4. The Comptroller has power to decide as to the completeness of the organization of a national bank, and his certificate is conclusive.

"5. Where a shareholder of a corporation is called upon to respond to a liability as such, and where a party has contracted with a corporation, and is sued upon the contract, neither is permitted to deny the existence or the legal validity of such corporation."

Latimer v. Bard (C. C.) 76 Fed. 537, was a suit by Latimer as receiver of a national bank to enforce the personal liability of Bard a stockholder. Bard filed an answer setting up that his stock upon which the assessment was made was invalid and unlawful for the reason that the whole amount of the increase was not paid in. After reviewing Casey v. Galli, supra, and other cases, the court announced its conclusions in this language:

"Applying the principles of the foregoing cases, it seems to me clear that the action of the Comptroller of the Currency in certifying that the whole amount of the increase of stock had been paid in, with his approval of the increase, so partakes of the judicial character that it cannot be assailed in this proceeding. In reaching this conclusion it must be borne in mind that the particular matter which, by the answer, is relied upon as a defense is, by the act of Congress, pointedly referred to the Comptroller for his finding and certification. If, therefore, the finding of any executive officer of the government, in any case, is to be treated as conclusive (except as against direct attack), it seems to me his finding and certificate of this fact ought to be. The important and diverse business interests of a bank, and the welfare of its stockholders and creditors, demand, in my opinion, that a matter of fact so affecting each and all of these features as the stockholders' relations to the bank, and their liability to its creditors, should be fixed, clearly and definitely, by some decisive authority, and this is what I think Congress undertook to do in requiring the Comptroller of the Currency to find and certify to the fact in question, and as a result thereof to give his approval to the increase."

Tillinghast v. Bailey (C. C.) 86 Fed. 46, was a suit of like nature. In that case the court said:

"Two propositions are mainly relied on for the complainant, either of which, if sustained, will dispose of the case without entering at large upon the facts in the case. It is insisted for the plaintiff: First, that the certificate of the Comptroller of the Currency, authorizing the increase of stock, to which the defendants were subscribers, except two, was the final act necessary to make the increase valid, and that this certificate is conclusive on the defendants, and that they cannot, as a matter of law, go behind the certificate for the purpose of making any question as to whether the facts on which the Comptroller was by law authorized to give his certificate existed; and, second, that, upon the facts of the case, the defendants are as to creditors of the banking association, in whose interest this suit is prosecuted, precluded by estoppel from making any question on the regularity and validity of the increase of stock certified to by the Comptroller. The second proposition would, of course, require an examination into the truth of the facts alleged as constituting the true ground of the estoppel claimed. I turn, then, for a moment to the contention that the certificate of the Comptroller is conclusive of the facts necessary to be ascertained and to authorize his certificate. It is now well settled that the action of the Comptroller in determining that such facts and conditions exist as authorize the appointment of a receiver for a national banking association is conclusive in all subsequent legal proceedings based upon his action and decision in that respect. So, too, his determination that it is necessary to make a call on the stockholders of a bank for the payment of debts, and of the amount which must be paid, whether the full amount of the par value of the stock or less is conclusive, and no question can be made or litigated in regard to whether there exist such facts as authorize his decision in this regard. In like manner, his determination that the facts necessary to authorize the original formation of a banking association, and that the conditions which justify his certificate exist, are facts which become conclusively established when he issues his certificate approving the formation of the bank and authorizing it to proceed to transact business. The existence of the facts which authorize the Comptroller to declare the formation of the corporation complete cannot thereafter be called in question. These several propositions are no longer open to question. Kennedy v. Gibson, 8 Wall. 498 [19 L. Ed. 476]; Casey v. Galli, 94 U. S. 673 [24 L. Ed. 168]; Bushnell v. Leland, 164 U. S. 685, 17 Sup. Ct. 209 [41 L. Ed. 598].

'Now, after study of this question, and the reasoning on which the decisions in the cases just referred to proceeded, I am constrained to say that I am unable to distinguish this case from those cases, and am unable to perceive on what ground it could be held in a case like this that the certificate of the Comptroller is not conclusive, and I think the principle announced in the cases referred to controls the question here presented. Every reason of public policy on which the decisions in those cases rest extends equally to this case and the questions here made. It seems to me that the certificate of the Comptroller approving the original formation of the association with a fixed capital stock, and his certificate approving an increase of stock, cannot be distinguished. I do not believe that any just distinction in principle exists, and a decision which undertakes

'to make such distinction is, in my opinion, not sustained by sound reason. The facts which are left to the determination of the Comptroller in certifying to the original formation of the association are vastly more important in every direction, both in kind and magnitude, than the facts which he finds, and to which he certifies, in the case of a mere increase of stock in an association already formed. If a sharcholder of the increased stock may go behind the Comptroller's certificate, and make the question that the stock in his hands is void because the facts do not exist which authorize the certificate of the Comptroller, I must confess that I see no reason why a shareholder of the original stock may not equally go behind the. certificate issued, declaring the association duly formed and authorized to do business, and cause the original stock to be declared invalid because of the nonexistence of 'the facts which the Comptroller was required to ascertain before ·making his certificate."

In this connection, see, also, Bank v. Mathews, 85 Fed. 934, 29 C. C. A. 491.

It seems that the· considerations which, in a suit to enforce the personal liability of a stockholder in a national bank, give conclusive effect to the comptroller's certificate and preclude such stockholder from defending upon the ground that the stock issue is void in his hands because he had not paid for it as the. law required him to do, would apply with equal force in a suit by a national bank against a stockholder upon a note given by him to the bank in lieu of a cash payment. I cannot distinguish the cases in principle, and believe that the question of the sufficiency of the payment for the stock is concluded by·the Comptroller's certificate, and that such stockholder in this collateral proceeding is precluded from defending upon the ground that his stock was invalid because not paid for in cash.

When the Comptroller issued his certificate it must be presumed that he had inquired into the fact and manner of payment for the increased capitalization of appellant, and that he was advised that appellee's stock had been paid in the manner found by the trial court.· If in the Comptroller's opinion the passing of credit for the amount of appellee's stock by the Ft. Worth bank to appellant was sufficient payment, the appellee should not be permitted to go behind the Comptroller's finding and certificate.

It may be suggested that fraud vitiates all things, and that the certificate was obtained by.fraud. But in the last three cited cases the same fraud was equally present. Furthermore, there is neither pleading nor proof that any fraud was practiced upon the Comptroller to procure the certificate. There is no showing that he ,was not fully advised of and cognizant of all the facts. ·

For the reasons indicated I respectfully dissent from the opinion and disposition of the case made by the majority.