## CITIZENS' NAT. BANK OF STAMFORD v. STEVENSON. (No. 224–3392.)

(Commission of Appeals of Texas, Section B. June 1, 1921.)

1. **Banks and banking** ☞233 — **Federal statutes control on any point with reference to national banks, including organization and issuance of stock.**

A national bank, being incorporated by the federal government, and subject to its laws in its organization and issuance of stock, is subject to the federal statutes, which are supreme and controlling; if the federal and state provisions on any point with reference to national banks conflict, the state rules must yield.

2. **Banks and banking** ☞242 — **Facts held to constitute a payment of money for stock.**

Where the president of plaintiff national bank, to assist defendant in the purchase of the bank's stock, arranged with another bank to make defendant a loan, to be evidenced by his note, indorsed by the president of plaintiff bank personally, and further secured by the bank stock to be issued to defendant, and the note was prepared and signed by defendant and indorsed by the president of plaintiff bank and accepted by the other bank, which passed the amount of the note to the credit of plaintiff bank subject to its check, and sent in a slip showing the same, and the stock was issued to defendant, who indorsed it in blank and forwarded it to the other bank to be deposited as collateral security for his note, the facts constituted a payment for the stock in money to plaintiff bank as completely and conclusively as would have an actual transfer of cash, and plaintiff bank can recover on the last of notes given it by defendant when it took up his note from the other bank.

3. **Banks and banking** ☞260(2)—**One national bank may lend, taking a note secured by stock of another such bank.**

It is not illegal for one national bank to loan money and take a note therefor secured by the stock of another national bank.

4. **Evidence** ☞20(2)—**That banks daily make loans secured by stock of other banks is matter of common knowledge.**

It is a matter of common knowledge that state and national banks are almost daily making loans secured by the capital stock of other banks.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by the Citizens' National Bank of Stamford against J. H. Stevenson. From judgment for defendant, plaintiff appealed to the Court of Civil Appeals, which affirmed (211 S. W. 644), and plaintiff brings error. Judgments of the trial court and Court of Civil Appeals reversed, and cause remanded to the trial court, with instructions to render judgment for plaintiff, on recommendation of the Commission of Appeals.

Andrews & Combes, of Stamford, for plaintiff in error.

Stinson, Chambers & Brooks, of Abilene, for defendant in error.

POWELL, J. In its petition for writ of error, the plaintiff in error states the nature and result of the suit with commendable clearness, and brevity as follows:

"This suit was originally brought by plaintiff in error against defendant in error in the district court of Jones county, on the 8th day of August, 1917, for the principal, interest, and attorney fees of a certain promissory note, of date the 1st day of December, 1916, executed by the defendant and payable to the order of the plaintiff for the principal sum of $958.65, due June 30, 1917, bearing interest from maturity until paid at the rate of 10 per cent. per annum, and providing for 10 per cent. attorney fees, on which there was then due, exclusive of interest, the sum of $1,054.51, in which suit the plaintiff, in due form of law, filed its affidavit and bond in attachment, which was duly approved, and the attachment was duly issued in conformity with law on August 8, 1917, and was duly levied on August 9, 1917, on the north one-half of section 21 of the Deaf and Dumb Asylum lands situated in Jones county, Tex., patent No. 311, volume 3, save and except the east 200 acres of said one-half section which had been designated by the defendant as a homestead, a copy of which writ of attachment, with the officer's return thereon, was filed with the county clerk of Jones county for record, and was recorded in the attachment records of said county whereby the plaintiff acquired an attachment lien against said property to secure the amount due on the note sued on. By its first amended original petition plaintiff prayed for judgment for principal, interest, and attorney fees due on said note, and for costs of suit and for the foreclosure of its attachment lien against said property. The defendant below answered that the obligation sued on was given by the defendant to the plaintiff for the purchase of stock in said bank, and was an illegal contract, and contravened the Constitution and statutes of the state of Texas, and therefore void, and prayed that plaintiff take nothing by said suit, and that he go hence without day and recover his costs. The cause was tried before the court without the intervention of a jury, and resulted in a judgment that plaintiff take nothing by its suit, and that the note sued on be canceled and defendant recover his costs. In

due time plaintiff filed its motion for new trial, which was overruled, and the cause was brought to the Court of Civil Appeals at Forth Worth, and transferred by the Supreme Court to the Court of Civil Appeals at El Paso, where it was affirmed."

The majority opinion of the Court of Civil Appeals referred to will be found in 211 S. W. 644. Associate Justice Higgins filed a vigorous dissent in a very able and exhaustive opinion. 211 S. W. 646.

As we view it, the controlling question in this appeal is whether or not, when the stock was first issued by the bank, it had been paid for in money. If so, then the note was not void, and Stevenson was liable upon it, as well as the various renewals thereof given from time to time. As bearing upon the above issue, the findings of fact of the trial court, adopted by the Court of Civil Appeals, are:

"The dealings between the parties leading up to and culminating in the execution of the note sued on are substantially as follows: The Citizens' National Bank of Stamford, being incorporated with a capital stock of $30,000, determined to increase its capital stock to $100,000, and thereupon solicited the defendant, by its cashier, to purchase of this issue. The defendant replied that he had no money with which to make a purchase. The defendant testifies that the cashier then replied that he would make him able to buy; that thereafter he executed his demand note for $600, payable to the plaintiff. This latter statement is denied by the cashier, he testifying that defendant executed a 30-day note, payable to the Western National Bank of Fort Worth, Tex. The trial court made the following finding of fact with reference to above and the after dealings of the parties:

" 'That defendant was informed that the money would be procured by him signing his note to the Western National Bank of Fort Worth, which he, on June 25, 1909, accordingly did. This note was for $600, representing the purchase price of five shares of stock of the value of $120 each; that the said note of the defendant was a demand note, and was placed by the plaintiff, or J. S. Morrow, acting for the plaintiff, with the said Fort Worth bank, and indorsed by the said J. S. Morrow, and the testimony authorizes the conclusion of fact that the money for the face value of the same was placed to the credit of plaintiff on the books of the Western National Bank; that several days thereafter the plaintiff notified the Comptroller of Currency that the necessary amount of capital stock had been subscribed and paid to the plaintiff, and thereupon the Comptroller of Currency issued his certificate to the effect, authorizing the said increase of capital stock as applied for by the plaintiff.

" 'That about the time of the execution of the said note by the defendant to the Western National Bank of Fort Worth, Tex., five shares of the stock of plaintiff, of the par value of $100 per share, was issued, but not delivered, to the defendant, but placed by the plaintiff with the Western National Bank of Fort Worth, as collateral security for the note of the defendant. That thereafter and in about 30 days, the defendant executed his note to the plaintiff to cover the amount of his note to the Western National Bank of Fort Worth, whereupon the note executed by the defendant to said Western National Bank was redeemed or paid and satisfied, and at the time of the execution of the note by defendant to plaintiff, in lieu of the Fort Worth bank note, the plaintiff then delivered said five shares of stock of plaintiff to the defendant. That defendant in this case from time to time renewed his note so given to the plaintiff, culminating in the final note sued on in this case for the sum of $958.65, the interest being added in as the note was renewed from time to time.' "

The record is strikingly free from controverted issues of fact. The facts are all undisputed, except with reference to the note executed by Stevenson to the Western National Bank of Fort Worth. In the first place, Stevenson testified very positively that he never did sign a note to said bank, but only and always to the plaintiff in error. The trial court found against this contention. Again, there was some dispute in the evidence as to whether or not the Fort Worth Bank note was payable on demand, or in 30 or 60 days. The lower court found that it was a demand note, but not presented for payment until 30 days after its execution. The case was very fully developed.

The federal statutes governing the increase of capital stock and the issuance thereof by national banks provide:

"Any association formed under this title may, by its articles of association, provide for an increase of its capital from time to time, as may be deemed expedient. subject to the limitations of this title. But the maximum of such increase to be provided in the articles of association shall be determined by the Comptroller of the Currency; and no increase of capital shall be valid until the whole amount of such increase is paid in, and notice thereof has been transmitted to the Comptroller of the Currency, and his certificate obtained specifying the amount of such increase of capital stock, with his approval thereof, and that it has been duly paid in as part of the capital of such association." U. S. Comp. St. § 9679.

Article 1146 of Vernon's Sayles' Revised Civil Statutes of Texas, carrying out provisions of the Constitution of Texas, is as follows:

"No corporation, domestic or foreign, doing business in the state, shall issue any stock whatever, except for money paid, labor done, which is reasonably worth at least the sum at which it was taken by the corporation, or property actually received, reasonably worth at least the sum at which it was taken by the company. Any corporation which violates the provisions of this article shall, on proof thereof in any court of competent jurisdiction, forfeit its charter, permit or license, as the case may be, and all rights and franchises which it holds under, from or by virtue of the laws of this state."

[1] The defendant in error invoked the Texas law in an effort to avoid his note. The plaintiff in error is a national bank, incorporated by the federal government as one of its agencies, and subject to its laws. In its organization and issuance of stock it is subject to the federal statutes, which are supreme and controlling. It is well settled that, if the federal and state provisions upon any point with reference to national banks conflict, the state rules must yield. See Davis v. Elmira Savings Bank, 161 U. S. 275, 16 Sup. Ct. 502, 40 L. Ed. 700; Easton v. State of Iowa, 188 U. S. 219, 23 Sup. Ct. 288, 47 L. Ed. 452; F. & M. National Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 196. The latter case is cited with approval by the Supreme Court of Texas in the case of Boerner v. Traders' National Bank, 90 Tex. 443, 39 S. W. 285.

In the case at bar, if the stock was paid for at all, it was paid in money. That being true, we are not called upon to consider possible conflicts between state and federal law. A payment in cash would comply with either law.

[2] Do the facts in this case constitute a payment of money for the stock? On this point the majority of the Court of Civil Appeals held:

"There is no pretense in this case that there was any money paid into the plaintiff's bank by the Fort Worth bank. It is only claimed that a credit was given upon the books of the Fort Worth bank, and then the amount placed to the credit of the capital stock upon the books of plaintiff. Credit of this nature is not equivalent to cash within the meaning of the Constitution and statutes."

No authority is cited by that court to sustain said ruling. We find none. We do not think it sound or correct. It is contrary to our daily experiences in the commercial world, and especially transactions between banks. A large majority of transfers of money between banks are made on paper. Deposits are made, subject to check by those in whose favor they are made. The money is paid out on such checks, and frequently transferred from one bank to another in such manner. In fact, we are sure that, as a rule, the actual cash is not transferred from one bank to another in payment of a credit or collection due it in one case out of ten.

In this case, J. S. Morrow, president of the Stamford Bank, assisted Stevenson in the purchase of five shares of stock in his bank. In order to enable him to buy the same, he arranged with the bank at Fort Worth to make Stevenson a loan, which was to be evidenced by the latter's note, indorsed by Morrow personally, and further secured by the bank stock to be issued to Stevenson. The note was prepared accordingly. It was signed by Stevenson and indorsed by Morrow. It

was accepted by the Fort Worth bank, and the latter placed the amount of the note to the credit of the Stamford bank, subject to its check, and sent in a slip showing the same. The Comptroller of the Currency of the United States was advised that the money had been paid in, and the increase of the capital stock was authorized by him. Then the stock was issued to Stevenson. He indorsed it in blank. It was then forwarded to the Fort Worth bank, to be deposited with it as collateral security for the Stevenson note. As we view it, these facts constitute a payment of the money to the Stamford bank, just as completely and conclusively as would an actual transfer of the cash to the vaults of the latter. We are sustained in this view by several of the authorities, to a few of which we refer.

Morse on Banks and Banking, § 451, says:

"A credit given for the amount of a check by the bank upon which it is drawn is equivalent to and will be treated as a payment of a check. It is the same as if the money had been paid over the counter on the check and then immediately paid back again to the account."

The above text is quoted with approval by the Supreme Court of Nebraska in the case of Bartley v. State, 53 Neb. 310, 73 N. W. 744, as follows:

"It was conceded on the argument by counsel for the accused that if the latter had drawn from the depository bank the actual cash and then redeemed the warrant therewith, proof thereof would be sufficient to sustain the charge of embezzlement of money. As we view it, the legal effect of the transaction, as it actually occurred, is not materially different. The defendant, as state treasurer, drew his check upon the Omaha National Bank for $201,884.05, payable to the order of the president thereof, and delivered the same to the payee, which, in connection with the acceptance of the check by the bank, the entry of the transaction upon the books thereof, and the surrender of the warrant to the defendant, constituted a segregation or separation of the amount of dollars expressed in the check from the general mass of money in the bank as the portion belonging to the state, and passed the title to the latter. In contemplation of the parties, and in the eye of the law, the segregation was as full and complete as though Mr. Millard, the president of the bank, upon the delivery of the check to him had stepped into the vault, counted out $201,884.05, placed it upon the counter, charged the state with that amount on the bank books, credited the Chemical National Bank with a like sum, delivered the warrant to the defendant, and then returned the money to the vault from whence it came; or as if the check had been made payable to the defendant's own order, by himself presented to the paying teller at the bank for payment, who selected from the mass of money in the bank the sum represented by the check, placed the same in a pile on the counter, and then, by direction of the defendant, applied the same in payment of the warrant. To constitute embezzlement it was

not necessary that the defendant himself should have acquired the physical or manual possession of the money. He, by his check, authorized and directed the bank to pay the money called for therein to 'J. H. Millard, Pt.' The bank was thereby empowered to select and transfer the money to the payee, which, in contemplation of law, it did, although there was no actual handling of a dollar in the entire transaction. In the language of Morse, Banks and Banking, § 451, 'A credit given for the amount of a check by the bank upon which it is drawn is equivalent to, and will be treated as, a payment of the check. It is the same as if the money had been paid over the counter on the check, and then immediately paid back again to the account or for the use for which the credit is given.' See Oddie v. National City Bank of New York, 45 N. Y. 735."

Again, the same text is cited with approval by the Supreme Court of Oregon, in case of State v. Ross, 55 Or. 450, 104 Pac. 596, 106 Pac. 1022, 42 L. R. A. (N. S.) 601, 613. That court, continuing, says:

"3. When the Trust Company placed to the credit of 'Steel, Treasurer, Education,' the amount of a check, it thereby acknowledged that it had received the amount of the check in money, and is at least prima facie sufficient to establish the receipt of the money by the Trust Company."

Judge Williams, of our own Supreme Court, in case of Anderson v. Walker, County Judge, 93 Tex. 119, 53 S. W. 821, expresses the same view as follows:

"It is an undisputed fact that a credit to the county was entered upon the bank books, and this, prima facie, represented so much money on deposit belonging to the county." See Newmark on Bank Deposits, § 131.

In our view, therefore, this stock was actually paid for in money. The issuance thereof was lawful, and the first note executed by Stevenson was valid and binding, as were the several renewals thereof, including the note in suit, executed from time to time. Having held this stock was paid for, it is not necessary to pass upon the question so ably discussed by Judge Higgins in his dissent, and in which he holds that the certificate of the Comptroller of the Currency that the money had been paid in was conclusive, and not subject to collateral attack.

[3, 4] It is suggested that the note to the Western National Bank was void, because it is illegal for one national bank to loan money and take a note therefor, secured by the stock of another national bank. We know of no such law of either state or nation. We have been cited to no such law. It is within the common knowledge of us all that state and national banks are almost daily making loans secured by capital stock of other banks. It has been distinctly held that one national bank can make a loan secured by the stock of another national bank. The United States Supreme Court, in the case of National Bank v. Case, 99 U. S. 628, 25 L. Ed. 448, speaks as follows:

"There is nothing in the argument on behalf of the appellant that the bank was not authorized to make a loan with the stock of another bank pledged as collateral security. That is an ordinary mode of loaning, and there is nothing in the letter or spirit of the National Banking Act that prohibits it. But if there were, the lender could not set up its own violation of law to escape the responsibility resulting from its illegal action."

The transaction between Morrow and Stevenson, in our view, was entirely legitimate. If Morrow was good enough to help Stevenson to get this stock with his bank, even to the extent of indorsing his note personally, that fact should not afford Stevenson any cause for complaint. If Morrow was careless of his bank's interest in later making to Stevenson a loan without security, to pay his debt to the Fort Worth bank, the only room for complaint was on the part of the other stockholders of the bank. Stevenson should not be heard now to try to avoid a valid obligation, even though the bank stock purchased did not prove profitable. Investments are frequently made which turn out likewise.

No fraud on the part of plaintiff in error or its officers was alleged in the pleadings filed by Stevenson. None was shown. There is no evidence showing any promise, or agreement, on the part of the Stamford bank or its officers, to take care of Stevenson's note to the Fort Worth bank at its maturity. The whole case, as heretofore stated, seems to us to present a state of facts which doubtless happens time and time again, each day in Texas, and which we deem lawful.

As we view the case, the only proper judgment in the lower court would have been one in favor of plaintiff in error for the full amount sued for, with foreclosure of its attachment lien. We would recommend the rendition of such a judgment here except for the fact that we think, as a practical proposition, the trial court and its clerk can more conveniently assess the damages and work out other details. In fact, the record here does not disclose an entirely accurate or detailed description of the 200-acre homestead tract to be excluded from the attachment lien foreclosure. Therefore, we recommend that the judgments of the district court and the Court of Civil Appeals be reversed, and the cause remanded to the former, with instructions to render judgment in favor of plaintiff in error for the full amount due upon the note sued upon, as per its terms, including principal, interest, and attorney's fees, for costs of court and a foreclosure of its attachment lien, all as prayed for in its first amended original petition.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.